U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

JAN 14 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Gildea                                                      Civil Action No. 12-02343

versus                                                      Judge Richard T. Haik, Sr.

Triton Diving Services, LLC                                 Magistrate Judge C. Michael Hill

**MEMORANDUM RULING**

Before the Court is a Motion for Partial Summary Judgment filed by defendant Triton Diving Services, LLC ("Triton") [Rec. Doc. 21], plaintiff Jeremiah D. Gildea's ("Gildea") Opposition [Rec. Doc. 28], and Triton's Reply thereto [Rec. Doc. 34]. For the following reasons, Triton's motion will be denied.

*I. Background*

Plaintiff was a commercial diver employed by Triton. In September 2009 Gildea was assigned to Triton's DSV MR. JOE, which was performing a subsurface platform inspection job for Devon Energy in West Cameron, Block 165 in the Gulf of Mexico. Plaintiff boarded the vessel on the evening of September 9, 2009 and retired to his bunk. The next morning plaintiff made a dive for approximately one hour. He then returned to the vessel and after spending 1½ to 2 hours in the decompression chamber, plaintiff ate a meal and returned to his bunk for a nap. Upon waking, plaintiff notice what looked like an insect bite on his right thigh. He reported the bite to his dive supervisor, Lee Wallmark, who said they would have to keep an eye on it. Upon returning to his bunk area, plaintiff found that at the foot of his bunk, an 18 inch by 18 inch section of the interior wall was missing leaving a space open to

the cavity of vessel. When he asked a deck mate about the space, he was told a panel was being replaced or other work was being done in that area.

A few hours later, plaintiff noticed the bite appeared to have worsened significantly and was red and tender to the touch. By the next day, the bite had worsened and plaintiff could not put weight on his right leg without pain. Plaintiff showed the bite to the medical technician aboard the vessel, who noted it appeared to be a spider bite and photographed the area.

The vessel returned to shore on September 11 and plaintiff communicated with his superiors at Triton who instructed him to proceed to Houston and seek medical care. Plaintiff went directly to the Emergency Room a Memorial Hermann Hospital in Houston. The ER physician lanced and drained the abscess, took cultures and sent plaintiff home with antibiotics and pain medication. Two days later, plaintiff's condition had worsened and plaintiff had developed a high fever. He returned to the emergency room where he was admitted to the hospital. On September 14, the ER physicians informed plaintiff that the lab results indicated he had an MRSA(Methicillin Resistant *Staphylococcus aureus*) "Staph" infection, which plaintiff reported to Triton. Plaintiff was administered intravenous antibiotics and morphine for three days and was discharged from the hospital on September 17. Plaintiff continued with an infectious disease expert on an outpatient basis. He treated the wound and continued on the antibiotic medication. A final culture of the would on October 21, 2009 found the would was no longer infected. Because he continued to

experience soreness and pain in his right leg, plaintiff began treating with a pain management specialist who gave him a TENS devise to manage his leg pain. An MRI and ultrasound performed by the pain specialist revealed scar tissue at certain nerve bases in his leg.

Plaintiff filed this action seeking remedies pursuant to the Jones Act and the General Maritime Law.

## *II. Summary Judgment Standard*

Summary judgment is warranted under Rule 56(c) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The movant must inform the court of the basis for its motion and identify those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323d 265 (1986). The non-moving party must then go beyond the pleadings and "identify specific evidence in the record and ... articulate the precise manner in which that evidence supports his or her claim." *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir.2008). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir.2002).

## *III. Analysis*

Triton moves the Court to dismiss plaintiff's claims of negligence and unseaworthiness of the vessel, DSV MR. JOE. Jones Act negligence and unseaworthiness

claims are separate causes of action and are treated as such. *See Brunner v. Maritime Overseas Corp.*, 779 F.2d 296, 298 (5th Cir.1986). In this case, the basis of both the negligence and unseaworthiness claims by Gildea against Triton is that he was injured as a result of a spider bite while he was working aboard Triton's vessel.

## A. *Negligence*

Under the Jones Act, 46 U.S.C. § 30101, et. seq, a seaman's employer is liable for damages if the employer's negligence caused the seaman's injury. *See Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir.1997) (*en banc*). The employer is held to a standard of ordinary prudence under the circumstances. *Id.* "An employer 'has a continuing duty to provide a reasonably safe place to work and to use ordinary care to maintain the vessel in a reasonably safe condition.'" *Lett v. Omega Protein, Inc.*, 487 Fed. Appx. 839, 843 (5th Cir.2012).

Triton contends that plaintiff cannot meet his burden of proving that the event leading to his MRSA infection at issue was reasonably foreseeable by Triton, and thus preventable. That is, "that Triton knew or should have known of the conditions that caused [the infection] and failed to take measure to prevent that event." In particular, Triton asserts that plaintiff cannot identify what specifically caused his infection, initially surmising it was a spider bite but later being informed by the ER physician that it was not. Triton further asserts plaintiff cannot prove his infection was foreseeable.

Plaintiff argues that he has presented sufficient evidence to support his assertion that

4

his infection was caused by a spider bite and that being bitten by a spider aboard the vessel was reasonably foreseeable to Triton. In his deposition, plaintiff stated that after the site worsened overnight, he showed the bite to Triton's own medical technician, Rich DiSanto, and dive supervisor, Lee Wallmark, who stated, "oh, that looks like a spider bite. We need to get it taken care of." *R. 28-3, Exh. B at p. 39.* While Triton contends the ER physician told plaintiff the bite "was actually an abscess," plaintiff stated in his deposition that when he showed the physician the wound and told him he thought it was a spider bite, the physician indicated that "it could be [a spider bite], but let's find out." *Id. at p. 50.*

Plaintiff further cites the affidavit of Dr. David A. Youngblood, M.D., a physician who has specialized in 'diving and hyperbaric medicine, wound care, and occupational medicine" for nearly fifty years. *R. 28-2, Exh. A.* After examining the pleadings, plaintiff's deposition and plaintiff's medical records, Dr. Youngblood concluded that the description of the bite, its progression and plaintiff's "bull's eye" lesion are typical of Brown Recluse spider bites. *Id.* Citing the Journal of Surgical Infections article, "Spider Bites Presenting With Methicillin-Resistant *Staphylococcus aureus* Sort Tissue Infection Require Early Aggressive Treatment," Dr. Youngblood further stated that spider bites have the potential to develop into abscesses with Methicillin-resistant Staph infections. *R. 28-2, Exhs. A & C.*

As to Triton's foreseeability of the occurrence of spider bites, in his deposition plaintiff stated that after inspecting his bunk area, he found an 18 inch by 18 inch hole in the wall that when into the bulkhead or cavity of the vessel—between the interior wall and the

exterior of the boat—at the foot of his bunk. *R. 28-2, Exh. B at p. 45*. Plaintiff further stated that in the course of his employment with Triton, he became aware of two divers who were bitten by Brown Recluse spiders about a year before the incident at issue. *Id. at p. 47*. Also, Dr. Youngblood stated that, based on his knowledge of the habits of the Brown Recluse spider, such an exposed space would be an ideal space for a Brown Recluse "spider sanctuary." *R. 28-1, Exh. A at p.5*.

### B. Unseaworthiness

To establish a claim for unseaworthiness under the general maritime law, a seaman must prove "that the owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purpose for which it is used." *Jackson v. OMI Corp.*, 245 F.3d 525, 527 (5th Cir.2001). A vessel can be unseaworthy if her "gear [is] defective," "appurtenances [are] in disrepair," or "crew [is] unfit." *Usner v. Luckenback Overseas Corp.*, 91 S.Ct. 514, 517 (1971). The duty to provide a seaworthy vessel is absolute and completely independent of the duty under the Jones Act to exercise reasonable care; therefore, a showing of negligence is not required. *See Phillips v. W. Co. of N. Am.*, 953 F.2d 923, 928 (5th Cir.1992). "Although the shipowner has an absolute duty to provide a seaworthy vessel, the vessel need not be 'accident free.'" *Simeon v. T. Smith & Son, Inc.*, 852 F.2d 1421, 1432–33 (5th Cir.1988). To prevail on an unseaworthiness claim, the seaman "must prove that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably

probable consequence of the unseaworthiness." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir.1988).

Triton focuses on plaintiff's MRSA infection, maintaining that plaintiff did not suffer from a spider bite but rather developed the Staph infection from a source other than the vessel. *R. 21-6, Aff. of Folse.* In response, plaintiff relies on his own deposition testimony as to his discovery of an open cavity space at the base of his bunk as well as the affidavit of David A. Youngblood, M.D. Dr. Youngblood states that plaintiff's medical records indicate his wound was consistent with the "typical 'Bull's Eye' lesions caused by Brown Recluse bites" and the space at the end of his bunk was "ideal for a Brown Recluse 'spider sanctuary.'" Although apparently rare, several courts have found that improper living and working conditions aboard a ship which proximately caused or contributed to the seaman's injury will make the vessel unseaworthy as to him. *Hill v. Atlantic Nav. Co.*, 218 F.2d 654 (4th Cir. 1955) (inadequate ventilation found to cause explosion or flash fire in quarters); *Evans v. Schneider Trans. Co.*, 250 F.2d 710 (2d Cir. 1957) (drafty room lead to seaman's tuberculosis); *Bradt v. United States*, 221 F.2d 325 (2d Cir. 1955) (vessel's unseaworthiness caused seaman's tuberculosis).

As previously stated, a motion for summary judgment can only be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Before a court

7

can find that there are no genuine issues of material facts it must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272 (5th Cir. 1991). Upon considering plaintiff's deposition testimony as well as the affidavit of Dr. Youngblood, the Court finds that Triton has failed to carry its summary judgment burden with respect to plaintiff's negligence claim and his unseaworthiness claim.

/s/ Richard T. Haik, Sr.

Richard T. Haik, Sr.